


NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| TABATCHNICK REALTY GROUP, LLC, a New Jersey Limited Liability Company, | : | |
| Plaintiff, | : | Civil Action No. 05-cv-3027 (PGS) |
| v. | : | |
| PNC BANK, N.A. a National Banking Association | : | OPINION |
| Defendant/Third Party Plaintiff | : | |
| v. | : | |
| TABATCHNICK FINE FOODS, INC., and BENJAMIN TABATCHNICK, | : | |
| Third Party Defendants | : | |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on two motion for summary judgment. Plaintiff, Tabatchnick Realty Group, LLC, and Third Party Defendant, Tabatchnick Fine Foods, Inc., (collectively referred to as "Tabatchnick"), move for summary judgment seeking double recovery on alleged usurious late charges paid to Defendant PNC Bank, N.A. ("PNC"), and to deny PNC's counterclaim for attorneys' fees. PNC has also moved for summary judgment to dismiss Tabatchnick's Complaint and to grant PNC attorneys' fees.

I.

Plaintiff Tabatchnick Realty Group, LLC and Third Party Defendant Tabatchnick Fine Foods, Inc., are New Jersey business entities engaged in the business of preparing and selling kosher foods since 1963. For many years, Tabatchnick dealt with United Trust Bank for its banking needs.

Of particular importance in this case are two loans: a promissory note for a general line of credit and a construction loan. The line of credit promissory note was executed on July 1, 2002 and had an initial maturity date of March 31, 2003. This note included a balloon payment obligation with Tabatchnick required to "pay regular monthly payments in all accrued unpaid interest." The note contained a late charge provision which provided as follows:

> If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment. This late charge shall be paid to Lender by Borrower for the purpose of defraying the expense incident to the handling of the delinquent payment.

Several extension agreements were entered into, the last of which extended the maturity date to September 30, 2004.

On June 23, 2003, Tabatchnick closed on a loan to finance the building of a new freezer facility at its Somerset location. Similar to the line of credit promissory note, the construction loan had a balloon payment obligation, with a maturity date of October 30, 2003, and a late charge provision. The late charge clause stated:

> If a payment is fifteen (15) days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $25.00, whichever is greater. This late charge shall be paid to Lender by Borrower for the purpose of defraying the expense incident to the handling of the delinquent payment.

As with the line of credit promissory note, besides the balloon payment, Tabatchnick was required to "pay regular monthly payments of all accrued unpaid interest due as of each payment date,

beginning July 1, 2003, with all subsequent interest payments to be due on the first day of each month after that."

On March 19, 2004, United Trust Bank was acquired by PNC, a national banking association, who succeeded to all of the rights and obligations of United Trust Bank. Prior to the merger, United Trust Bank and Tabatchnick entered into two extension agreements for the construction loan. The second of the agreements carried the maturity date of the construction loan to April 30, 2004. Two additional extensions were entered into, subsequent to the merger, by PNC and Tabatchnick. Despite the new maturity date of April 30, 2004, the third extension was not entered into until June 30, 2004.[1] In the interim, the May invoice issued to Tabatchnick included a late charge on the entire loan, amounting to $112,500.00. The following invoice, issued on June 18, 2004, before the third extension, withdrew the late charge. The next extension was entered into on August 19, 2004, extending the maturity date to September 30, 2004.

On May 17, 2004 and July 29, 2004, Tabatchnick accepted two additional loans from PNC to re-finance the construction loan. On August 16, 2004, PNC demanded that the second of the two loans receive priority and that existing financing from another bank be subordinate to an earlier loan from United Trust Bank. Tabatchnick refused to agree to these demands. In September of 2004, Tabatchnick learned that PNC was offering rates on particular loans below that which PNC had offered Tabatchnick. PNC advised Tabatchnick that these rates were being offered for new applications and Tabatchnick did not qualify for the lower rate. As the parties' relationship continued to deteriorate, on September 30, 2004, PNC wrote to Tabatchnick and stated that if their loan was not closed by October 8, 2004, the rate would increase.

---

[1] Tabatchnick states at paragraph 22 of its L. Civ. R. 56.1 Statement that the third extension was not signed until June 30, 2004. At paragraph 23, Tabatchnick states that the third extension extended the maturity date until June 30, 2004.

Then, on October 26, 2004, PNC advised Tabatchnick, for the first time, that Tabatchnick owed PNC substantial late fees.  In an October 28, 2004 letter, PNC informed Tabatchnick that both the line of credit and construction loan had matured on September 30, 2004 and the principal payments had not yet been made, though all monthly interest payments had continued timely. As a result, PNC demanded payment of principal, per diem interest for the current month, and a late charge of 5% of the entire principal amount of the construction loan.  No late charge was demanded for the line of credit.  The late charge on the construction loan amounted to $113,032.81.  On November 12, 2004, Tabatchnick paid to PNC the entire amount demanded by PNC, under a reservation of rights, to satisfy both the line of credit and the construction loan.

Tabatchnick has brought this action, and now moves for summary judgment, to recovery twice the amount paid, claiming that the late charge on the balloon payment was usurious in violation of 12 U.S.C. §§ 85 and 86 of the National Banking Act (NBA).  PNC has also moved for summary judgment, arguing 12 U.S.C. §§ 85 and 86 are inapplicable, and seeks judgment on its counterclaim for attorneys fees.

II.

The NBA provides for recovery for "twice the amount of interest" if the "rate of interest is greater than allowed under Section 85," 12 U.S.C. §86. Section 85, in turn, states that "[a]ny association may take, receive, reserve, and charge on any loan or discount made, or upon any notes, bills of exchange, or other evidence of debt, interest at the rate allowed by the laws of the State, Territory, or District where the bank is located."

The Comptroller of the Currency, who is charged with enforcing the federal banking laws, has concluded that late fees fall within the definition of interest.  Interest includes:

> any payment compensating a creditor or prospective creditor for an extension of credit, making available a line of credit, or any default or breach by a borrower of a condition upon which credit was extended. It includes, among other things, the following fees connected with credit extension or availability: numerical periodic rates, <u>*late fees*</u>, no sufficient funds (NSF) fees, overlimit fees, annual fees, cash advance fees, and membership fees. It does not ordinarily include appraisal fees, premiums and commissions attributable to insurance guaranteeing repayment of any extension of credit, finders' fees ... or fees incurred to obtain credit reports.

12 C.F.R. § 7.4001(a) (emphasis added). In the case of *Smiley v. Citibank*, 517 U.S. 735, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996), the U.S. Supreme Court found the Comptroller's definition to be appropriate and reasonable. See also *Sherman v. Citibank (South Dakota), N.A.*, 272 N.J. Super. 435 (App. Div.) *rev. by* 143 N.J. 35, *reinstated by* 146 N.J. 65 (1996).[2] Thus, this Court has little difficulty characterizing the late fee at issue as interest.

The NBA (12 U.S.C. §§ 85 and 86), incorporates by reference the usury law of the state in which the national bank is located. *Daggs v. Phoenix National Bank*, 177 U.S. 549, 20 S.Ct. 732, 44 L.Ed. 882 (1900); *Bartholomew v. Northampton Nat. Bank of Easton, Easton, Pa.*, 584 F.2d 1288, 1295 (3d Cir. 1978). Accordingly, the issue here is whether the application of the 5% late charge to the balloon payment violates New Jersey's usury statute (*N.J.S.A.* 31:1-1) entitling Tabatchnick to twice the amount paid pursuant to 12 U.S.C. §86. The New Jersey usury statute specifically excludes corporations like Tabatchnick Realty from its protection. The statute provides

---

[2] The Supreme Court of New Jersey reversed the decision of the Appellate Division in *Sherman v. Citibank (South Dakota), N.A.*, 143 N.J. 35 (1994). However, following the United States Supreme Court's decision in *Smiley v. Citibank*, 517 U.S. 735, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996), the United Stated Supreme Court granted the petition for writ of certiorari in *Sherman v. Citibank (South Dakota), N.A.*, 517 U.S. 1241, 116 S.Ct. 2493, 135 L.Ed.2d 186 (1996), vacating the judgment and remanding the case for further consideration in light of *Smiley*. Subsequently, in *Sherman v. Citibank (South Dakota), N.A.*, 146 N.J. 65 (1996), the Supreme Court of New Jersey reinstated the judgment of the Appellate Division for the reasons expressed in *Smiley*.

that "[n]o corporation shall plead or set up the defense of usury to any action brought against it to recover damages or enforce a remedy on any obligation executed by said corporation." It is well settled that a corporation may not plead usury as a defense. See, *Feller v. Architects Display Bldgs., Inc.*, 54 N.J.Super. 205 (App. Div. 1959).

Tabatchnick attempts to avoid this construction of the statute by distinguishing "rate of interest," as considered under *N.J.S.A.* 31:1-1, and the interest charged. The parties concede that "[a] national bank located in a state the law of which denies the defense of usury to a corporate borrower may charge a corporate borrower any rate of interest agreed upon by a corporate borrower." 13 C.F.R. § 7.400(d). Tabatchnick argues, however, that the regulation's use of the phrase "rate of interest," makes the regulation distinguishable. Tabatchnick does not contest the imposition of a 5% late charge, but rather just the application of the percentage rate to the balloon payment.[3] This Court concludes otherwise. If the aforementioned regulation were inapplicable because it speaks to a "rate of interest," as suggested by Tabatchnick, then so too are 12 U.S.C. §§ 85 and 86, both of which concern a "rate" of interest. The late fee at issue is spelled out in terms of a percentage rate of interest. Therefore, *N.J.S.A.* 31:1-1 and 13 C.F.R. § 7.400(d) are applicable and bar Tabatchnick's claim of usury.

Tabatchnick contends that this finding would leave corporate borrowers without any claim for an improper late charge. This is not so. A corporate borrow simply cannot plead usury.[4]

---

[3] Both parties acknowledge that the New Jersey Supreme Court held in *MetLife Capital Financial Corp. v. Washington Ave. Assoc.*, 159 N.J. 484 (1999), that a 5% late fee charged against a monthly installment payment was reasonable.

[4] While neither party cites to a case applying a late charge to a balloon payment, the Court's research has revealed several cases which discuss such a charge. See *Trustco Bank New York v. 37 Clark Street, Inc.*, 599 N.Y.S.2d 404 (1993)(contemplating language identical to the late charge provision on the loans to Tabatchnick, the court found an impermissible penalty); *Sterling v. Goodman*, 102 Nev. 218 (1986)(holding such a late charge to be an impermissible

Accordingly, double recover of the late fee is inappropriate on the basis that it is usurious. Tabatchnick's motion for double recovery is denied and PNC's motion on this point is granted.

III.

With regard to PNC's motion for summary judgment on its Counterclaim for attorneys' fees, PNC's motion is denied and Tabatchnick's motion is granted. PNC offers no meritorious argument as to why it is entitled to such an award. In its Counterclaim, PNC alleges that "[a]s a result of filing this action and attempting to recover from PNC amounts due under the loan documents, Tabatchnick, L.L.C. and Tabatchnick Foods are forcing PNC to incur attorneys' fees and costs in connection with the collection of all sums due under the loan documents . . . " The construction loan promissory note contains the following provision for the payment by the borrower of the lender's attorneys' fees:

> ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

This lawsuit, however, does not constitute an attempt by PNC to collect on monies owed under the loan agreement. All monies owed have been paid. By the institution of this lawsuit, Tabatchnick is merely attempting to recoup what it believes was an illegal late charge as was envisioned by the

---

penalty); *Fleet Bank of Mass., N.A. v. One-O-Six Realty, Inc.*, 3 Mass. L. Reptr. 392 (1995)(same); compare *1300 Avenue P Realty Corp. v. Stratigakis*, 720 N.Y.S.2d 725 (2000). Interestingly, none of the cases concern, discuss, or even mention usury. Rather, each of these cases turn on the language of the loan agreement. Moreover, only one case, which loan agreement was completely distinguishable from the agreement here, permitted the late charge. See *1300 Avenue P Realty Corp.*, 720 N.Y.S.2d 725 (2000).

parties when Tabatchnick paid and PNC accepted all of the charges under a reservation of rights letter. By the terms of the construction loan promissory note, PNC is not entitled to attorneys' fees. Therefore, PNC's Counterclaim is dismissed.

IV.

Having denied both motions, this leaves the court in the unenviable position of determining who is entitled to the $113,032.81. However, no claim in equity, common law, or state law has been made for such relief. Rather, Tabatchnick's Complaint consists of one count alleging violations of 12 U.S.C. §§ 85 and 86. Counsel for Tabatchnick confidently argued that it did not plead for alternative relief under state or common law because its purposeful strategy was to obtain double recovery under 12 U.S.C. §86. In spite of this Court's prodding and conspicuous suggestion at oral argument to amend in order to assert state law claims for an impermissible penalty, plaintiff's counsel chose not to heed the Court's advice. The Court, therefore, is compelled to deny Tabatchnick's motion for summary judgment except as to PNC's counterclaim. Conversely, PNC's motion for summary judgment is granted, except as to its counterclaim for attorneys' fees, which is denied. This matter is dismissed in its entirety.

February 15, 2007                                S/ *Peter G. Sheridan*
                                                 PETER G. SHERIDAN, U.S.D.J.